IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**YOLANDA P. CHACON,**

    **Plaintiff,**

**vs.**      Civ. No. 01 CV 0110 JP/RLP

**LARRY G. MASSANARI,**
**Acting Commissioner of the**
**Social Security Administration,**

    **Defendant.**

## UNITED STATES MAGISTRATE JUDGE'S
## ANALYSIS AND RECOMMENDED DISPOSITION[1]

1.  Plaintiff, Yolanda P. Chacon, filed applications for Disability Insurance Benefits (DIB) and Supplemental Security Income Benefits (SSI) on February 17, 1997, alleging disability as of October 16,1996, due to low back pain. Her applications were denied at the first and second levels of administrative review, and by an Administrative Law Judge following a hearing. Plaintiff appealed the ALJ's decision to the Appeals Council which declined review on December 6, 2000. The matter before this Court is Plaintiff's Motion to Reverse or Remand the decision of the Commissioner denying benefits. For the reasons stated below, I recommend that Plaintiff's Motion be denied, and that the Commissioner's decision be affirmed.

I.     Standard of Review

2.     This Court reviews the Commissioner's decision to determine whether the records contain

---

[1]Within ten (10) days after a party is served with a copy of these proposed findings and recommendations, that party may, pursuant to 28 U.S.C. §636(b)(1), file written objections to such proposed findings and recommendations. A party must file any objections within the ten (10) day period if that party seeks appellate review of the proposed findings and recommendations. If no objections are filed, no appellate review will be allowed.

substantial evidence to support the findings, and to determine whether the correct legal standards were applied. *Castellano v. Secretary of Health & Human Services*, 26 F.3d 1027, 1028 (10th Cir.1994). Substantial evidence is " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Soliz v. Chater*, 82 F.3d 373, 375 (10th Cir.1996) (*quoting Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971)). In reviewing the Commissioner's decision, the court cannot weigh the evidence or substitute my discretion for that of the Commissioner, but I have the duty to carefully consider the entire record and make my determination on the record as a whole. *Dollar v. Bowen*, 821 F.2d 530, 532 (10th Cir.1987).

3. The Commissioner has established a five-step sequential evaluation process to determine if a claimant is disabled. *Reyes v. Bowen*, 845 F.2d 242, 243 (10th Cir.1988). If a claimant is determined to be disabled or not disabled at any step, the evaluation process ends there. *Sorenson v. Bowen*, 888 F.2d 706, 710 (10th Cir.1989). The burden of proof is on the claimant through step four; then it shifts to the Commissioner. *Id.*

II. <u>Vocational and Medical Facts</u>

4. Plaintiff was 46 years of age at the time of the administrative hearing, and 47 at the time of the ALJ's decision. (Tr. 46, 235). She has a high school education, and has completed one year of college. (Tr. 167, 260). Her past relevant work has been as a cafeteria cook. (Tr. 66). Plaintiff alleges disability based on low back pain radiating down her left leg. (Tr. 54, 79). She also suffers from migraine headaches, depression and obesity. (Tr. 39).

5. Plaintiff originally injured her back in a motor vehicle accident in 1988 (Tr. 131, 179-180), and underwent L5 laminectomy and disc excision. (Tr. 183). She returned to work after this injury with a 25 pound lifting restriction. (Tr. 180). She started chiropractic treatment for migraine

headaches in 1995. (Tr. 166). She reinjured her back on October 16, 1996. (Tr. 54). She was evaluated Dr. T. Glenn Easter, M.D., five days later. He diagnosed lumbosacral strain/sprain with probable sciatica, and instituted a course of physical therapy, use of a lumbar corset, and pain medication. (Tr. 131-132). Plaintiff's pain and signs of sciatica persisted, with pain radiating down to her left foot and a decrease in reflexes in her left lower extremity. (Tr. 130). Radiographic testing eventually indicated scar tissue formation at L4-5 from prior surgery. (Tr. 140-141, 116).

6. Plaintiff continued physical therapy through January 15, 1997, when Dr. Easter gave her a permanent lifting restriction of 15 pounds and prepared a return to work form indicating that she would resume work, apparently within these restrictions. (Tr. 123-128, 136, 143). He also completed a certificate of eligibility for a disabled placard, stating:

> . . . Patient most thoroughly fulfills the criteria of being so severely limited in his/her ability to walk due to arthritic, neurological, or orthopedic condition that the person cannot ascend or descend more than 10 steps, although I do not believe that she can walk more than 100 feet without stopping to rest . . .

(Tr. 117).

7. On March 14, 1997, N. Nickerson, M.D., a non-examining physician, prepared a residual functional capacity assessment, based upon a review records from Dr. Easter and Plaintiff's physical therapist. (Tr. 31, 170-177). Dr. Nickerson concluded that Plaintiff could lift 20 pounds occasionally,10 pounds frequently, stand or walk for 6 hours in an 8 hours day, sit for six hours in an 8 hour day, had unlimited ability to push and/or pull within the weight restrictions listed, and could only occasionally climb, balance, stoop, kneel, crouch or crawl. She did not explain in her report why her evaluation of Plaintiff's lifting limitation was different from that of Dr. Easter.

8. Plaintiff was seen by John Allen, M.D., an orthopedic surgeon, for an independent evaluation

on February 6, 1997. (Tr. 165-169). Plaintiff stated that due to left sided low back pain radiating into her whole left leg she was limited to sitting or standing for a maximum of 30 minutes, walking a maximum of 1 block and lifting a maximum of 10 pounds. (Tr. 166). She also complained of depression. *Id.* She stated that she was unable to perform recommended exercises because of pain, and that she treated her pain with medication.[2] (Tr. 167). Dr. Allen noted numerous abnormalities on physical examination, and diagnosed irritable[3] left sacroiliac joint, degenerative joint disease of the thoracolumbar and cervical spine, left scapular instability with secondary rotator cuff impingement, depression, symptom magnification (Waddell's 4/5) and morbid obesity[4]. (Tr. 168). With regard to the diagnoses of symptom magnification, Dr. Allen added: "Symptom magnification should not be confused with malingering. It may be conscious or unconscious. It has been reported that in the presence of symptom magnification good results are less likely to be obtained from invasive procedures." *Id.*

9. Dr. Allen felt that Plaintiff's main problem was her irritable SIJ, which had probably been aggravated by her prior physical therapy program, as well as depression. (Tr. 168-169). He recommended a daily exercise program, weaning off of Darvocet N 100 and reevaluation after two weeks. (Tr. 169). The daily exercise program was not initiated until March 30, 1998. (Tr.249).

10. Plaintiff was evaluated by Barry Diskant, M.D., an occupational medicine specialist, on June 9, 1997. (Tr. 178-185). Plaintiff complained of low back pain radiating down her left leg and sleep

---

[2] Darvocet N 100, Extra Strength Tylenol, and Nova Pain cream. (Tr. 167).

[3] According to Dr. Allen, the term "irritable" is used to indicate a joint or motion segment in which there are pain complaints, with pain on palpation and reduced or dysfunctional active range of motion.

[4] According to Dr. Allen, the term "morbid obesity" is used to indicate that weight is 100 lbs, or more greater than average weight for stated height.

4

disturbance caused by pain.  She stated that she could not sit or stand for more than one-half hour at a time, walk more than a mile or drive for more than an hour.  She continued to use Darvocet, one per day, which she stated didn't help much.  Based on history, review of prior medical records and physical examination[5], Dr. Diskant diagnosed chronic low back pain with left L5 radiculopathy, status post 1988 L5 laminectomy and disc excision, epidural scar tissue at L4-5 entrapping the left L5 nerve causing left leg radicular symptoms, mechanical back pain, and marked symptom magnification. (Tr. 183-184).  In terms of functional abilities, Dr. Diskant stated:

> This patient is capable of working within the light physical demand category as defined by the New Mexico Workers' Compensation Statutes, Section 52-1-26.4. She may lift up to 20 pounds occasionally, 10 pounds frequently, and a negligible amount repetitively.

(Tr. 184).

11. Plaintiff was evaluated on June 18, 1997, by Jorge Vargas, M.D., a psychiatrist.  Evaluation of Plaintiff's mental condition is not at issue in this appeal.  Dr. Vargas' evaluation is significant to the extent the ALJ relied upon the history given in assessing credibility.  This will be discussed *infra*.

12. On February 4, 1998, Dr. Easter completed another Certificate of Eligibility for Disabled Placard for Plaintiff, indicating that she could not ascend or descend more than ten steps. (Tr. 135). Of note, Dr. Easter did not indicate that Plaintiff's ability to walk was limited, as he had previously. (See ¶ 6 *supra*).

13. Plaintiff was treated at the Ben Archer Clinic in February and March 1998, primarily for

---

[5]In terms of lower extremity function, Dr. Diskant noted that Plaintiff walked with a moderate left limp, was able to walk on her heels and toe with some difficulty, to squat half-way with some difficulty, had a diminished left ankle jerk, cogwheel type weakness of the left lower extremity, no atrophy or asymmetry, mild diminution of sharp sensation in the left L5 dermatome over the lateral calf and dorsolateral left foot, a mismatch between seated and supine SLR ( negative SLR seated; positive SLR supine), and no signs of sciatic tension.  (Tr. 182).

5

hormone replacement therapy, hypertension and migraine headaches. (Tr. 202-204). Her headache resolved following an injection of Toradol and Phenergan. (Tr. 203). Although the clinic's record indicate that Plaintiff's headache was brought on by a family death, Plaintiff testified that her doctor felt migraines were brought on by cigarette smoke. (Tr. 203, 261).

14. Plaintiff started a 12 session course of physical therapy on March 30, 1998, nine days before her administrative hearing. (Tr. 248-251). She testified that she was walking a block to the therapy center, around a track once there, and did stretches and bending. (Tr. 248-249). She felt that physical therapy had helped a lot. (Tr. 250).

15. Plaintiff's activities include spending several days a week with mother and fourteen month old grandson, attending flea markets with her husband, fishing, picking up aluminum cans for recycling with her daughters, ironing, washing dishes and cooking. (Tr. 253-254, 261). She uses over-the-counter medication as a sleep aid. (Tr. 256). In written records she stated that she was taking Darvocet and Tylenol for pain control. (Tr. 108).

III. The ALJ's Decision

16. The ALJ found that Plaintiff has a severe combination of impairments[6] which do not meet or equal a listed impairment. He determined that she overstates the symptoms and limitations produced by her impairments, and therefore is not fully credible. He found that she retains the residual functional capacity for light work that does not require more than occasional climbing, balancing, stooping, kneeling crouching or crawling, and that these additional limitations do not significantly

---

[6]Chronic mechanical low back pain, with left leg discomfort, including degenerative joint disease of the cervical and thoracolumbar spine, chronic low back pain with left L5 radiculopathy, status post 1988 L4-5 laminectomy and disc excision, epidural scar tissue at L4-5 entrapping the left L5 nerve causing radicular symptoms and obesity. (Finding No. 3, Tr. 14).

6

limit the occupational base for light work. Using Rule 202.21, Subpart P, Appendix 2, (grids) as a "framework," he found that she is not disabled. (Tr. 14-22).

IV. Issues on Appeal

17. The following issues are raised:

   A. Whether the ALJ Used Proper Legal Standards in Assessing Plaintiff's Credibility, and Whether His Credibility Findings Were Supported by Substantial Evidence.

   B. Whether the ALJ Used Proper Legal Standards in Evaluating Plaintiff's Residual Functional Capacity, and Whether His RFC Findings Were Supported by Substantial Evidence.

   C. Whether the ALJ fulfilled his obligation to develop the record.

V. Analysis

   A. Whether the ALJ Used Proper Legal Standards in Evaluating Plaintiff's Residual Functional Capacity, and Whether His RFC Findings Were Supported by Substantial Evidence.

18. The ALJ found that although Plaintiff's impairments may create pain and functional limitation, they are not as limiting as she alleges. In reviewing this determination, the Court should "defer to the ALJ as trier of fact, the individual optimally positioned to observe and assess witness credibility." *Casias v. Sec'y of Health & Human Serv's*, 933 F.2d 799, 801 (10th Cir.1991). "Credibility is the province of the ALJ." *Hamilton v. Sec'y of Health & Human Serv's*, 961 F.2d 1495, 1499 (10th Cir.1992). At the same time, the ALJ must explain why specific evidence relevant to each factor supports a conclusion that a claimant's subjective complaints are not credible. *See Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir.1995); *but see Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir.2000) (*Kepler* does not require formalistic factor-by-factor recitation of evidence). "Findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion

in the guise of findings." *Id.* (*quoting Huston v. Bowen*, 838 F.2d 1125, 1133 (10th Cir. 1988). (footnote omitted)). "In making a finding about the credibility of an individual's statements, the adjudicator need not totally accept or totally reject the individual's statements." *See Social Security Ruling 96-7p*, 61 Fed.Reg. at 34486. Rather, the ALJ "may find all, only some, or none of an individual's allegations to be credible." *See id.*

19. The ALJ based his credibility determination several factors:

(1) The opinions of treating and examining physicians that Plaintiff could perform significant work activity. (See ¶¶ 6 & 10, *supra*).

(2) Dr. Allen's recommendation that Plaintiff increase her physical activity to restore function (¶ 9, *supra*).

(3) Plaintiff's improvement when physical therapy was restarted. (¶ 14, *supra*).

(4) Plaintiff's activities (¶ 15, *supra*). I note that these activites are not "minimal." *See, e.g., Thompson v. Sullivan*, 987 F.2d 1482 (10th Cir. 1993).

(5) Inconsistencies in Plaintiff's written statement concerning the severity of her symptoms and history she gave to examining physicians. In documents submitted in connection with her benefits claim, Plaintiff stated that her pain was so great it made her cry, and that she was unable to shower or dress with assistance. (*see. e.g.*, Tr. 79,81,83,85). The ALJ pointed to the history taken by Dr. Jorge Vargas (186-189), which does not mention pain of this nature.[7]

(6) Plaintiff's testimony that she could lift 15 pounds. (Tr. 252).

---

[7] The following comments were recorded by Dr. Vargas with regard to Plaintiff's complaints of pain: "She can't do gardening, and she is constantly in pain." "Her mind wanders about the bills and her back pain, and she can't find a comfortable position to sleep in." "She is in constant pain." Dr. Vargas observed, "She sat on the couch for part of the interview, but stood up due to the pain in her back." (Tr. 186, 188).

(7) Evidence that symptom magnification was a significant factor in her overall functioning. Symptom magnification was noted by Dr. Allen and Dr. Diskant. (Tr. 168, 184). Standing alone, the ALJ reliance on symptom magnification in assessing credibility would not be appropriate. The ALJ has, however, cited to other substantial evidence.

The ALJ's rejection of Plaintiff's credibility is not contrary to law, was based on substantial evidence, and should be upheld.

20. The ALJ's finding regarding Plaintiff's lack of credibility does not compel a finding of not disabled. The ALJ must also determine Plaintiff's residual functional capacity for work activity on a regular and continuing basis despite her limitations. 20 C.F.R. ¶¶404.1545, 416.945.

> B. <u>Whether the ALJ Used Proper Legal Standards in Evaluating Plaintiff's Residual Functional Capacity, and Whether His RFC Findings Were Supported by Substantial Evidence.</u>

21. Residual functional capacity ("RFC" herein) is what an individual can still do on a regular and continuing basis despite his or her impairments, and is based upon all the relevant evidence. 20 C.F.R. §§404.1545, 416.945. The ALJ determined that Plaintiff had the RFC for light work, provided she only occasionally climb, balance, stoop, kneel, crouch and crawl.

> *Light work.* Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. . .

20 C.F.R.§§404.1567(b), 416.967(b).

The findings of Dr. Diskant and Dr. Nickerson provide substantial evidence that Plaintiff could perform the exertional requirements of light work despite her pain causing impairment. Dr. Diskant

9

specifically found that Plaintiff could lift 20 pounds occasionally and 10 pounds frequently, despite her physical limitations and complaints of pain. He stated that Plaintiff, despite her low back pain and symptoms of radiculopathy affecting her left leg, was able to perform "light" work as that term is defined in the New Mexico Worker's Compensation Statutes, §52-1-26.4 NMSA 1998 (1991 Repl.). The definition of "light" physical capacity in this statute is similar to the regulatory definition applicable to Plaintiff's social security claim.[8] Dr. Nickerson's evaluation of Plaintiff's exertional capacity agreed with that of Dr. Diskant. (Tr. 171). In addition, she addressed postural limitations related to Plaintiff's impairment, indicating that she was limited to occasional climbing, balancing, stooping, kneeling, crouching and crawling. (Tr. 170). This will be discussed *infra* at ¶ 27.

22.     In order to apply correct legal principles in ascertaining Plaintiff's RFC the ALJ was required to discuss the opinion of Plaintiff's treating physician, Dr. Easter, who stated she that she had a permanent lifting restriction of 15 pounds, less than the amount required for the full range of light work.

> A treating physician's opinion must be given substantial weight unless good cause is shown to disregard it. *Frey v. Bowen*, 816 F.2d 508, 513 (10th Cir.1987). When a treating physician's opinion is inconsistent with other medical evidence, the ALJ's task is to examine the other physicians' reports "to see if [they] 'outweigh[ ]' the treating physician's report, not the other way around." *Reyes v. Bowen*, 845 F.2d 242, 245 (10th Cir.1988). The ALJ must give specific, legitimate reasons for disregarding the treating physician's opinion that a claimant is disabled. *Frey*, 816 F.2d at 513.

*Goatcher v. U.S. Dep't of Health & Human Servs.*, 52 F.3d 288, 289-90 (10th Cir.1995).

The ALJ did not mention Dr. Easter's lifting restriction, or give specific reasons for rejecting it.

---

[8] Section 52-1-26.4 NMSA 1998 states: [T]he ability to lift up to twenty pounds occasionally or up to ten pounds frequently. Even though the weight lifted may only be a negligible amount, a job is in this category when it requires walking or standing to a significant degree or when it involves sitting most of the time with a degree of pushing and pulling of arm or leg controls or both. . .

10

23. The Commissioner contends that his error is harmless, since the evidence and findings reflect that Plaintiff would be considered capable of performing the full range of sedentary work. *See*, 20 C.F.R. §404.1567(b) ( ". . . If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time."). I agree. Sedentary work involves lifting no more than ten pounds at a time, no more than two hours of walking and standing a day, a total of six hours of sitting a day and good use of hand and fingers for repetitive hand-finger actions. *West's Social Security Reporting Service, SSR. 83-10*, at 29. There is no evidence of medical restrictions limiting Plaintiff's ability to sit for long periods or indicating Plaintiff suffers from loss of fine dexterity. The only restrictions indicated by Plaintiff's treating physician, Dr. Easter, limit her from lifting more than 15 pounds or climbing more than ten steps, which clearly would not limit her ability to perform sedentary work.

24. Plaintiff also challenges the ALJ's comments regarding her migraine headaches. The ALJ stated that Plaintiff's migraine headaches could be avoided if she avoided cigarette smoking. (Tr. 20). Plaintiff contends that here is no evidence to indicate that other factors might not also trigger headaches. The ALJ's observation was based on Plaintiff's testimony that her physician said the headaches were caused by people smoking around her. (Tr. 261). There is no compelling, or even suggestive evidence that Plaintiff's headaches cause any impairment, as she was treated for migraine headache on only one occasion during the period under review. (Tr. 203).

  C. <u>Whether the ALJ fulfilled his obligation to develop the record.</u>

25. Plaintiff contends that the ALJ failed to develop the record in two respects: First, because she was not asked whether she had any restrictions in her ability to sit or stand, and second because

11

a vocational expert was not called to testify, despite the ALJ's finding that Plaintiff could not perform the full range of light work.

26. As to the first point, the ALJ gave Plaintiff every opportunity to discuss and describe her physical limitations, and how they would affect her in the workplace. (See, e.g., Tr. 257-258). The ALJ fulfilled his duty "to ensure that an adequate record (was) developed during the disability hearing consistent with the issues raised." *Henrie v. U.S. Dep't of Health & Human Serv.*, 13 F.3d 359, 360-361 (10th Cir. 1993).

27. As to the second point, the ALJ relied on *S.S.R. 83-14* in finding that Plaintiff's ability to perform the full range of light work was not significantly reduced by postural impairments that limited her to "occasional" climbing, balancing, stooping, kneeling, crouching and crawling. The same is true for sedentary work. *See S.S.R. 83-10, West's Social Security Reporting Services 1983-1991*, p. 29 ("[W]ork performed primarily in a seated position entails no significant stooping."); *See S.S.R. 85-15, West's Social Security Reporting Service 1983-1991,* p. 350 (if a person can stoop or crouch occasionally the sedentary and light occupational base is virtually intact--limitations on the ability to crawl and kneel are also of little significance in the broad world of work); *See S.S.R. 96-9p, 1996 WL 374185, *7* ("Postural limitation or restrictions related to such activities as climbing ladders, ropes, or scaffolds, balancing, kneeling, crouching, or crawling would not usually erode the occupational base for a full range of unskilled sedentary work significantly because those activities are not usually required in sedentary work."). These limitations do not erode the occupational base of sedentary jobs sufficiently to render the application of the grid improper. There was no need to employ the services of a vocational expert to testify as to the effect of Plaintiff's nonexertional limitations on the light or sedentary occupational base.

VI. Recommended Disposition

28. For the reasons stated herein, I recommend that Plaintiff's Motion to Reverse and Remand be denied, and that the decision of the Commissioner denying Plaintiff's applications DIB and SSI be affirmed.

_____
RICHARD L. PUGLISI
UNITED STATES MAGISTRATE JUDGE